The Saint Louis, Arkansas & Texas Railway Company v.
Anna Johnston et al.

No. 2916.

1. **Testimony—Alteration of Road, etc.**—While not competent in order to show a negligent construction on part of a railway to prove that subsequent to the occurrence giving right to the cause of action the railway company had altered the work, still it is not error to allow such testimony to explain a photograph of the place, taken after such alteration, or to show that the defect could have been remedied.

2. **Opinions—Expert Testimony.**—A railway track was constructed so that sand from time to time at a public crossing was washed upon the track, making it unsafe. It was competent to allow witnesses qualifying as experts to testify that the road crossing was not properly constructed, or to the readiness with which the sand washed upon the track could be seen and the chances of stopping the engine after the same had been seen.

3. **Wages of Deceased in Suit by Widow for His Death.**—It was competent to prove the monthly wages of the deceased, as well as his probable chances of promotion at the time of his death, in suit by the widow and children for damages for negligently causing his death.

4. **Verdict—Excessive Damages.**—For negligently causing the death of an employe, a competent engineer earning $125 per month, a verdict against the railway company for $5000 for the widow, and the same for a daughter seven years old, was not excessive.

5. **Damages—Married Daughter—Adult Son.**—There being no evidence that deceased contributed to the support of a married daughter, and the son lacking but a few months of his majority, it was error to allow a verdict in their favor for $2500 each. The court should have instructed the jury to allow them nothing.

Appeal from Smith.   Tried below before Hon. Felix J. McCord.

This was a suit to recover damages for negligently causing the death of Arthur Johnston, instituted in the District Court of Smith County, Texas, on the 31st day of December, 1888, by appellee Mrs. Anna Johnston in her own right as surviving wife and for the use and benefit of James H. Johnston, Capitola Wills, and Jennie Johnston, the surviving children of herself and the said Arthur Johnston, against appellant, the St. Louis, Arkansas & Texas Railway Company in Texas.   Plaintiff alleged in her petition that she and those for whom she sued had been damaged in the sum of $25,000 by reason of the death of said Arthur Johnston, and for which amount she asked judgment.   It was alleged in the petition that said Arthur Johnston was an engineer in the service of defendant and was killed by the engine which he was driving running upon a bank of sand which had been washed upon the track of defendant's railway at a crossing of one of the public streets of the city of Tyler, whereby the engine was derailed and overturned upon the said Arthur Johnston, thereby causing his death.   The negligence alleged against defendant was in failing to properly construct its road so as to prevent the sand from washing upon its track at said crossing.

Defendant on the 15th day of February, 1889, filed its original answer,

wherein it pleaded, among other defenses, general denial and contributory negligence on part of the deceased.

On the trial of the cause in the District Court on the 14th day of March, 1889, judgment was rendered against defendant in favor of plaintiff Mrs. Anna Johnston for $5000, in favor of Jennie Freyer Johnston for $5000, in favor of James H. Johnston for $2500, and in favor of Capitola Wills for $2500.

Defendant's motion for new trial having been overruled, it appealed.

*Finlay, Marsh & Butler,* for appellant.— 1.   Evidence that a railway company after an accident made changes in its road at the place where the accident occurred is not admissible to show its negligence.   Railway v. McGowan, 73 Texas, 355.

2.   The evidence of the witnesses that the crossing was not constructed as crossings usually are on railways properly built and maintained was immaterial and not competent.   The witnesses should have stated the facts, from which the jury could draw their own inferences.   Railway v. Evansich, 61 Texas, 3; Proof and Plead. in Acc. Cases (Black), sec. 37; Railway v. Commonwealth, 80 Ky., 143; 65 Mo., 597.

3.   The issue being as to whether the crossing was properly constructed or not, and the condition of the crossing being such that it could be so described to the jury by the witnesses that they could be as capable of exercising their judgments and forming a correct opinion as the witnesses themselves, it was error in the court to permit the witnesses to give their opinions.   Shelley v. Austin, 74 Texas, 608; Railway v. Shultz, 43 Ohio St., 270; Muldooney v. Railway, 36 Iowa, 473; Crane v. Northfield, 33 Vt., 126; Bliss v. Wilbraham, 8 Allen, 564; Montgomery v. Scott, 34 Wis., 345; Kelly v. Fon du Lac, 31 Wis., 179; Enright v. Railway, 33 Cal., 230; Sawers v. Dukes, 8 Minn., 23.

4.   The opinion of the witness Clark, who was not shown to be an expert, as to whether or not the crossing was constructed as crossings usually are on railways properly built and maintained was not competent evidence.

5.   Where it was practicable, as in this case, for the witnesses to place palpably before the jury the facts upon which their opinion was formed as to the readiness with which the sand could have been seen, they should have been restricted in their testimony to such facts, and the jurors should have been left to form their conclusions from the facts, unaided by the mere opinions of the witnesses.   Railway v. Shultz, 43 Ohio St., 270; Muldooney v. Railway, 36 Iowa, 473; State v. Stakey, 16 Minn., 282.

6.   The court erred in refusing to set aside the verdict of the jury and grant a new trial, because the verdict of the jury is excessive, in that there was no evidence that Mrs. Anna Johnston and Jennie Johnston, deceased's minor child, had he lived, would have derived pecuniary benefit from him to the amount of $5000 each, the evidence showing that deceased at the

time of his death was an old man, and was contributing but little to their support at that time; and there was no evidence whatever to sustain the verdict in favor of Capitola Wills, in that it was proved that she was a married woman at the time, living apart from deceased with her husband, and there was no evidence that she was dependent upon deceased or would have received any contribution from him had he survived; and the verdict as to James Johnston is unsupported by and is against the testimony, in that the evidence shows that he became of the age of twenty-one years on January 16, 1889, less than six months from the death of his father, that he was able and willing to support his mother, and there is no evidence that his father was contributing to his support at the time of his death, or that had his father lived that there was any reasonable expectation that he would have contributed to his maintenance or support. Railway v. Cowser, 57 Texas, 293; Railway v. Malone, 63 Md., 135; Potter v. Railway, 21 Wis., 377.

*J. M. Duncan* and *T. N. Jones*, for appellees.— 1. Under all the facts in this case, the evidence admitted on the point as to changes made by defendant in the road and crossing at the point of accident was admissible.

2. Defendant's pleading and evidence showing that it rested its defense largely upon the claim that at the point where the crossing was constructed it was impossible to make a safe crossing or one that would not let sand on the track, evidence was admissible to meet this phase of the defense which tended to show that in fact afterwards the defendant did make a better and less dangerous crossing at that point. Railway v. Waller, 56 Texas, 338.

3. The photographs taken a few days before trial and offered by plaintiff having been admitted without objection, evidence of changes and improvements made, if any, subsequent to the accident was admissible to explain the difference, if any, between the scene of the wreck as shown in the pictures and as it existed at the time of the accident.

4. The witnesses Clark and Wells being experts (but whether experts or not), their testimony and opinion as to whether the crossing was properly built and maintained, and as to whether it was such crossing as is usually built and maintained on railways properly built and maintained, was competent. Turnpike Co. v. Cassell, 66 Md., 419–431; Railway v. Jarrard, 65 Texas, 560, 567; Gonzales College v. McHugh, 21 Texas, 256; Railway v. Klaus, 64 Texas, 293; Railway v. Cowser, 57 Texas, 293; Alexander v. Sterling, 71 Ill., 366; Laughlin v. Railway, 26 Am. and Eng. Ry. Cases, 377; Beaty v. Gilmore, 16 Pa. St., 463–469; Taylor v. Town of Maury, 43 Conn., 36–47.

5. The testimony as to the wages of deceased was clearly admissible to show the pecuniary loss or probable loss to his family. Railway v. Lehmberg, 75 Texas, 61; Railway v. Smith, 65 Texas, 167.

6.    The excessiveness or nonexcessiveness of the verdict must not be judged by the amount apportioned to each one, but must be taken as a whole, under the charge of the court giving the measure of the entire damage "as the sum which the deceased would probably have realized from his labor   *   *   *   during his life, taking into consideration his age, health, habits of life, industry, ability, and manner of life, as well as his probable duration of life, deducting expenses of living."

7.    The jury under the statute and the law as charged had the discretion uncontrolled to apportion the damages returned among the parties as they saw proper, and under their instructions they could not have returned altogether more than the damages they estimated were suffered by Johnston's death.    Appellant can not complain of the division; only that the whole is excessive.    Rev. Stats., arts. 2603, 2699; Railway v. Barron, 5 Wall., 91–106.

8.    The right of each of the plaintiffs to recover any amount did not depend upon the amount they were entitled to or might have expected to receive from Johnston's labor had he not been killed, nor upon their dependency for support upon him, but upon such apportionment as the jury might make out of the whole damage assessed.    Rev. Stats., arts. 2603, 2609; Railway v. Kuehn, 70 Texas, 582.

GAINES, ASSOCIATE JUSTICE.—Arthur Johnston, a locomotive engineer in the employment of the appellant company, was killed by the derailment of his engine at a street crossing in the city of Tyler.    The accident occurred on the Kansas & Gulf Short Line Railroad, which road was being operated at the time of the accident by the appellant company.    The appellee is the widow of the deceased, and brought this suit to recover of appellant damages for his death.    The action was brought not only for the benefit of the plaintiff, but also for the benefit of James H. Johnston, Capitola Wills, and Jennie Johnston, the son and daughters of the deceased.

The derailment was caused by sand which had been washed upon the track from the street on the day of the accident.    The street, which had been recently opened, ran at that point east and west and crossed the railroad very nearly at right angles.    From the track west the street inclined upwards for a distance of several hundred feet.    The soil being sandy, when a heavy rain fell it would carry the sand down the street and upon the track of the railroad, submerging it.    There was testimony to show that this had occurred on several occasions before the derailment, and it was not disputed that on the very morning of the day on which the accident occurred it had been found necessary to remove the sand from the track at that point.

It is assigned that "the court erred in permitting, over defendent's objection, plaintiff's witnesses T. J. Dobbs, J. J. Clark, and Ed. Green to

testify that defendant, subsequent to the accident, made changes in its road and the crossing at the place where the accident occurred."

This court has held that it is not competent in order to show a negligent and faulty construction on part of a railroad to prove that subsequent to the occurrence which gave rise to the cause of action they had altered the work. Railway v. McGowan, 73 Texas, 355. The obvious ground is that the mere fact that a company after the happening of an accident has attempted by an alteration to render their structures more secure is no evidence that they knew or ought to have known them to be faulty before the accident occurred. A contrary rule would deter companies from making improvements which might affect existing litigation, and for that reason the rule as adopted by this court commends itself on the ground of public policy. But in this case the bill of exceptions shows that the testimony was admitted upon two grounds. One was to explain a photograph of the crossing which had been taken after the accident had happened and after the changes had been made, and which had been introduced in evidence. There being a contention on part of the defendant that the washing of sand upon the crossing could not have been prevented, the other ground for its admission was that it tended to prove that the defect could have been remedied. If the change had been made by the city and the danger had been obviated, the fact would even then have been good evidence as showing that it was practicable so to construct the crossing as that sand would not wash upon the track. The testimony was competent and relevant for the purposes for which it was admitted, and the cases cited by appellant do not apply. If a charge had been asked on behalf of defendant to the effect that the mere fact that the company had changed the crossing after the accident was not of itself evidence of negligence, it should have been given.

The court did not err, as claimed by appellant, "in permitting plaintiff's witness J. J. Clark to testify, over defendant's objections, that the crossing was not constructed as crossings usually are on railways properly built and maintained, and in permitting E. H. Wells, a witness for plaintiff, to testify, over defendant's objections, that he did not think upon a railroad properly constructed and maintained that the crossing was a properly built and constructed road crossing and properly defended against the inflow of water."

The witnesses qualified as experts. The fact that the crossing was not constructed as railroad crossings usually are was not conclusive proof either that it was safe or defective, but in connection with the other testimony in the case tended to show the latter. Wells was a civil engineer, and had acted as such in the construction of the railroad upon which the accident occurred. He was competent to testify to his opinion as to whether the crossing was properly constructed or not.

Neither did the court err in permitting witnesses to testify as to the

average wages of an engineer of Johnston's experience. The damages suffered in cases of this character are not capable of being established by direct proof. Resort must be had to circumstances, and one of the most important facts to be known is the earning capacity of the deceased. The same may be said as to the admission of the testimony of the witness Clark as to the chances of promotion of an extra engineer, which is complained of in appellant's sixth assignment.

The fourth assignment of error is that "the court erred in permitting plaintiff's witnesses J. J. Clark and J. P. Carpenter to testify, over defendant's objection, in response to questions propounded to them by plaintiff's attorney as to the readiness with which the sand could have been seen on the track and as to the chances of stopping the engine after the same had been seen."

We think the matter testified about was such as could be established by the opinion of experts. The facts could hardly be proved in any other manner. The witnesses were experienced locomotive engineers.

It is also insisted that "the court erred in permitting the plaintiff's witness T. J. Dobbs to testify, over defendant's objection, substantially that it was not necessary to construct the bridge and its approaches so as to funnel the water from up the street on to the bridge, and further in overruling defendant's objection to the testimony of plaintiff's witness J. J. Clark to the effect substantially that he did not think that the crossing, drainage, etc., was properly constructed so as to secure the passage of trains and the safety of the track, from the fact that the track was covered with sand, etc."

The witness Dobbs was thoroughly familiar with the ground and had testified fully as to its topography. If it be an opinion that it was possible to cause the water to flow away from the bridge, it is such an opinion as this court has held it is competent for a witness to give as testimony who has knowledge of all the facts and who has testified to them. Railway v. Klaus, 64 Texas, 294; Railway v. Locker, *ante,* 279. The witness Clark, though not a civil engineer, had much experience as a railroad man and had worked upon and was familiar with this railroad. He also knew the locality of the accident. But even if his testimony was erroneously admitted it was harmless, for the accident itself showed that the construction of the crossing was faulty and dangerous.

Appellant's seventh assignment complains of the refusal to give two special instructions relating to distinct issues in the case. It is not in accordance with the rules and therefore will not be considered. Railway v. Redeker, 67 Texas, 181.

There was no error in giving special charge No. 1. It contained a correct proposition and, in connection with the main charge, was not misleading.

This brings us to the question whether or not the verdict is excessive. The appellee, the widow of the deceased, and their minor daughter about

seven years old, recovered each $5000. The deceased was proved to be a competent engineer, and there was evidence to show that the average pay of such an employe was $125 per month. It was his duty to support his wife and minor daughter, and the presumption is that he had discharged and would have continued to discharge that duty. There was no evidence to the contrary.

The mere fact that for a short time before his death he had sent his wife but two small sums of money is accounted for partly by the circumstance that he had been out of employment before entering the service of the defendant and partly by the fact that at his death the company owed him for about three months wages. We have said in more than one case that the damages in cases of this character do not admit of exact proof and can not be made a question of mathematics. They must be left largely to the discretion of the jury. Heavier damages than those awarded the widow and minor daughter have been held not to be so clearly excessive as to authorize this court to set them aside.

But as to Capitola Wills and J. H. Johnston the case is different. Mrs. Wills was a married woman and J. H. Johnston lacked but a few months of attaining his majority. There was no evidence that the deceased had contributed anything to his married daughter or to his son. It was the duty of the husband of Mrs. Wills to support her. The father was entitled to the services of his son during his minority. The father having nothing with which to support himself and his wife and minor daughter, it would have been the duty of the son, even if his father had lived, to earn his own support. Considering their respective ages, it was incumbent upon the son rather to contribute to the support of the father than of the father to assist pecuniarily the son; and the reasonable presumption would seem to be that ordinary filial feeling would under the circumstances render the life of the child more valuable in a pecuniary point of view to the parent than the life of the latter to the former. Now the damages recoverable in an action of this character are for the pecuniary loss of the party benefited by the recovery. Before a recovery can be had the loss must be proved like any other fact. It is difficult to imagine a case in which it can be proved directly. It must be proved by circumstances, such as the relation and ages of the deceased and the surviving relative, the capacity of the former for earning money, and his disposition to contribute pecuniarily to the aid of the latter. In this case the circumstances repel the idea that the son and married daughter of the deceased had any just grounds to expect pecuniary assistance from their father. The law does not and can not compel the party causing the death to give a gratuity in these cases. The recovery is to compensate a loss and not to confer a bounty. For these reasons we are of opinion that the verdict as to Capitola Wills and James H. Johnston must be set aside.

Because the court did not charge the jury to find nothing for the son

and the married daughter, as might properly have been done, the jury may have thought they should award them very substantial damages. There is error in so much of the judgment as gives damages to these bene-ficiaries, for which it must be reversed unless they see proper to enter a re-mittitur. Should they do so the judgment as to the others will be affirmed.

*Affirmed in part.*

Delivered November 25, 1890.